UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| TREASURER, TRUSTEES OF DRURY INDUSTRIES, INC. HEALTH CARE PLAN AND TRUST, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:09CV00121 SNLJ |
| SEAN GODING and CASEY & DEVOTI, P.C., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff and defendant Casey & Devoti's (Casey) cross motions for summary judgment to which the parties have filed their respective responses. Plaintiff seeks recovery based on an ERISA lien against the proceeds of a settlement defendant Goding received in a personal injury case in which he was represented by defendant Casey. Both motions raise essentially the same issues: whether the facts support plaintiff's claims against Casey for imposition of an "equitable lien by agreement," for tortious interference with contractual relations, and for conversion. Plaintiff's case against defendant Goding is stayed in bankruptcy. This Court, having now determined that there are no genuine issues of material fact, holds that summary judgment shall be entered in favor of defendant Casey and against plaintiff in all respects.

The material facts of the case are viewed in the light most favorable to plaintiff and indeed are taken verbatim from the "Introduction" of plaintiff's motion as follows:

At all times relevant herein, Defendant Sean Goding ("Goding") was a "Member" under the terms of the Trustees of Drury Industries Health Care Plan and Trust (the "Plan"), which is self-funded. The Plan is covered by the Employee Retirement Income Security Act of 1974. The Plaintiff is an administrator and a fiduciary of the plan and, as such, is entitled to bring this action pursuant to 29 U.S.C. § 1132(a)(3). The Plaintiff paid a total of $11,423.79 in medical benefits on behalf of Goding because of injuries he sustained in a slip and fall accident on February 25, 2008. Goding sought to recover from the parties who caused his injuries and, upon information and belief, Goding settled his claims relating to the February 25, 2008 accident for approximately $45,000.00. Prior to the settlement, Goding's attorney, Matthew C. Casey, of Defendant, Casey & Devoti, P. C., acknowledged in writing the Plan's rights to subrogation and reimbursement. Yet, on August 24, 2009, Mr. Casey told Plaintiff's counsel during a telephone conference that some or all of the disputed funds have been disbursed to his client, Defendant Goding and Defendants have refused to turn over the disputed funds to the Plan.

The Plan contains a "Subrogation and Right of Reimbursement" provision which provides for first priority reimbursement of medical expenses paid without regard to the make-whole rule, the common fund doctrine, and without regard to how the settlement was allocated. Additionally, the Administrator may take any legal action to recover benefits paid on behalf of the Plan. Specifically, the Plan requires that, upon making a recovery, Goding "reimburse [Drury] ... to the extent of Plan benefits ... paid on [Goding's] behalf from any recovery." Finally, the Plan provides that "[y]ou [Goding] and your legal representative [Casey & Devoti, P.C.] must hold in trust ... the proceeds of the gross Recovery ... immediately upon your receipt of the Recovery."

Consistent with these provisions, Casey & Devoti, P. C., stated that "[w]e are not challenging your right to reimbursement/subrogation...." In separate correspondence, Casey & Devoti, P. C. went further and stated that "[t]his will confirm that we do acknowledge Drury Inns, Inc.'s lien in this matter."

Initially, Defendant Casey & Devoti, P. C. appeared to abide by its commitment with respect to the funds subject to the Plan's lien. Unfortunately, a month after disbursing all of the other funds to itself and to Goding, Defendant Casey & Devoti, P. C. disbursed the disputed funds to Goding. Goding spent all but $1,500 of the settlement proceeds disbursed to him.

(Citiations to the record omitted.)

This case is proceeding against defendant Casey only because, as noted, defendant Goding is in bankruptcy. Regarding Goding, both plaintiff and Casey agree that the entire

proceeds of the settlement, except for the attorneys fees, have been disbursed to Goding and that Goding is liable to plaintiff under the subrogation agreement. Plaintiff's principal claim against Casey, however, is that it is subject to joint and several liability with Goding in the nature of "an equitable lien over the entire amount of benefits paid on behalf of Goding." To be sure the Supreme Court has recognized a cause of action in ERISA cases for imposition of an "equitable lien by agreement," Seraboff v. MAMSI, 547 U.S. 356, 364-65 (2006). But plaintiff relies more particularly on Southern Council of Industrial Workers v. Ford, 83 F.3d 966 (8th Cir. 1996), a more case-specific opinion involving a claim against a personal injury attorney who disbursed settlement proceeds to his client despite an ERISA-based subrogation agreement. The 8th Circuit noted "that a subrogation agreement is enforceable against an attorney who agrees with a client and a plan to honor the plan's subrogation right." Id. at 969. The Court then concluded "that the complaint. . .stated an ERISA claim against the [attorney] for violation of the subrogation clause" because both the client and the attorney signed the subrogation agreement. Id.

In response, Casey cites a 9th Circuit case, Hotel Employees & Restaurant v. Gentner, 50 F.3d 719 (9th Cir. 1995), which is more akin to the case at hand. In Gentner, trustees of an ERISA plan sued a personal injury attorney who disbursed settlement proceeds to his injured client despite an ERISA-based subrogation agreement, but unlike the Ford case, the attorney did not sign the subrogation agreement. The Court first observed that, in general, "absent a specific statutory directive, [an ERISA plan] beneficiary's attorney is not bound to the terms of a client's subrogation agreement to which he is not a signatory." Id. at 721(citations omitted). The Court added that "A subrogation agreement or lien can be enforced against the attorney only if the

attorney agrees with the client and creditor to protect the lien. . .Mere notice or knowledge of the subrogation agreement or lien does not constitute an implied contract." Id. The Court then concluded that "the Fund's argument that [the attorney's] actions violated the 'terms of the plan' even though there was no professional or contractual relationship between the Fund and the [attorney] is not supported by the law governing subrogation agreements." Id. at 721-22.

Here, plaintiff claims that its correspondence with Casey (the extent and circumstances of which are uncontested) was sufficient to establish the existence of an "equitable lien by agreement" that is binding on Casey. This Court disagrees. The critical parts of the correspondence are Casey's representations that "[w]e are not challenging [the Plan's] right to reimbursement/subrogation" and, in separate correspondence, "[t]his will confirm that we do acknowledge Drury Inns, Inc.'s lien in this matter." This is not a case like Ford, in which the lawyer actually signed the subrogation agreement. Nor is it a case in which the lawyer unequivocally agreed to transmit a specified amount of money to the plaintiff upon the settlement of the underlying case. Instead, the correspondence consists of nothing more than a simple acknowledgment that the plaintiff held a lien against the settlement proceeds by virtue of its subrogation agreement with Goding. Again, Casey was not a party to that subrogation agreement, and there is no other evidence of a professional or contractual relationship between plaintiff and Casey that would support a duty to plaintiff. And, as held in Gentner, mere notice or knowledge of the subrogation agreement or lien does not constitute an implied contract. Ultimately, although Casey acknowledged the lien, it did not agree to honor or protect the lien. Therefore, as a matter of law, the evidence does not support the existence of an equitable lien by agreement.

Plaintiff's tortious interference claim fares no better.  As both parties agree, the essential elements of the tort of tortious interference with contract expectancy are:

1) a contract or valid business expectancy,

2) defendant's knowledge of the contract or relationship,

3) a breach induced or caused by defendant's intentional interference,

4) absence of justification, and

5) damages.

Rhodes Eng'g Co., Inc. v. Public Water Supply Dist. No. 1 of Holt County, 128 S,W,3d 550, 564 (Mo. App. 2008).

Plaintiff's claim fails because there is no evidence that defendant Casey induced or caused or interfered in any way with the subrogation agreement between plaintiff and Goding.  The mere disbursement of the settlement proceeds to Goding cannot be said to be an inducement or cause of Goding's subsequent breach, nor can it be said to have interfered with the subrogation agreement.  After all, in the absence of an enforceable lien against Casey as this Court has so held, Casey was obligated to pay the proceeds directly to Goding.  In any event, there is not a whit of evidence that Casey encouraged Goding to breach the agreement, rather than to comply with it.

Finally, the claim for conversion fails as well.  To prove conversion, plaintiff must establish:

1) that plaintiff was the owner of the property or entitled to its possession,

2) that defendant took possession of the property with intent to exercise some control over it, and

3) that defendant thereby deprived plaintiff of the right to possession.

<u>Mackey v. Goslee</u>, 244 S.W.3d 261, 264 (Mo. App. 2008).

Suffice it to say that plaintiff here has not demonstrated its entitlement to the settlement funds prior to the distribution of the funds to Goding. That entitlement arose only when Goding received the funds. There was no conversion by Casey.

For the foregoing reasons, summary judgment shall be entered in favor of defendant Casey and against plaintiff in all respects.

Dated this 1st day of March, 2010.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE